COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| JAMES RANDALL MOORE A/K/A RANDY MOORE, | § | No. 08-08-00039-CV |
| Appellant, | § | Appeal from |
| v. | § | 416th District Court |
| CITY OF WYLIE, TEXAS AND WILLIAM JOHNSON, | § | of Collin County, Texas |
| | § | (TC # 416-1091-06) |
| Appellees. | § | |

**O P I N I O N**

James Randall Moore, a/k/a Randy Moore, appeals from a summary judgment granted in favor of the City of Wylie, Texas and William Johnson. Finding no error, we affirm.

**FACTUAL SUMMARY**

The City of Wylie hired Randy Moore as a building inspector on March 15, 2004. William Johnson, a senior building inspector, served as Moore's supervisor. On December 16, 2004, Johnson called Moore into his office and reprimanded him for attendance problems. When Moore questioned him, Johnson allegedly poked Moore in the chest with his finger three or four times and told him to do his job. Moore did not report the incident immediately, but he did tell another building inspector, Keith Moore,[1] about the confrontation. He also sought medical attention later in the day when he began suffering from tightness in the chest. The emergency room physician told Moore his

_____

[1] The two men are not related.

symptoms were stress-related.

Beginning in June 2005, Moore was verbally warned on three different occasions that Johnson had been receiving complaints from area builders, department staff, and inspection staff regarding Moore's work performance and attitude. In July 2005, Moore informed Johnson that another building inspector, Franquee Higgins, had not "red tagged" violations of the International Residential Code (IRC) and the Residential Construction Information Packet (RCIP) when he inspected a residence. On August 30, 2005, Johnson issued Moore a Performance Improvement Plan (PIP) concerning the complaints about his work performance and attitude. Moore, who had been absent due to a work-related injury, returned to work on September 12. For the first time, he notified the City of the alleged assault by Johnson nine months earlier. He reported the assault to the Wylie Police Department on September 23. That same day, he appealed the PIP. A few days later, Moore tendered a written request under the Family and Medical Leave Act relating to the August injury. The City approved that request and placed him on twelve weeks of FMLA leave, expiring on December 19, 2005. On December 27, 2005, Moore sought an additional twelve weeks of FMLA leave. The City denied that request and instructed Moore to return to work on January 12, 2006. On January 13, the City suspended Moore for three days for an August 31, 2005 incident. Moore resigned his employment on January 25, 2006, due to a hostile and unsafe working environment and Johnson's abusive behavior and purported assault. Johnson was acquitted of the assault charges on September 25, 2006.[2]

Moore filed suit against the City and Johnson, alleging violations of the Texas Whistleblower

---

[2] Moore's appellate counsel states in his brief that "the municipal court found Johnson guilty of assault" but he provides no citation to where in the record this evidence can be found. The record before us contains a judgment from the County Court at Law No. 4 of Collin County entered on September 25, 2006 acquitting Johnson of the assault charge.

Act.  He also sued Johnson for assault and intentional infliction of emotional distress.  Appellees filed a motion for traditional and no-evidence summary judgment with respect to all claims.  Moore filed an initial response and two supplemental responses. The trial court granted the no-evidence summary judgment and Moore brings six issues for review.

## PROPRIETY OF SUMMARY JUDGMENT

A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard of review.  *Viasana v. Ward County*, 296 S.W.3d 652 (Tex.App.--El Paso 2009, no pet.); *Martinez v. Leeds*, 218 S.W.3d 845, 848 (Tex.App.--El Paso 2007, no pet.). The party moving for no-evidence summary judgment must assert that there is no evidence of one or more essential elements of a claim or defense on which the non-movant would have the burden of proof at trial.  *Viasana*, 296 S.W.3d at 654; *Martinez*, 218 S.W.3d at 848; *see* TEX.R.CIV.P. 166a(i).  The burden then shifts to the non-movant to produce evidence raising a fact issue on the challenged elements.  *Viasana*, 296 S.W.3d at 654; *Martinez*, 218 S.W.3d at 848.  To raise a genuine issue of material fact, the non-movant must set forth more than a scintilla of probative evidence as to an essential element of his claim or defense.  *Viasana*, 296 S.W.3d at 654; *Martinez*, 218 S.W.3d at 848.

*Failure to Address all Summary Judgment Grounds*

Appellees expressly moved for summary judgment under Rule 166a(i) on the ground that Moore had no evidence of damages. Moore has not raised an issue on appeal addressing the damage element of each cause of action. He first addressed the issue in his reply brief. The Rules of Appellate Procedure do not allow an appellant to raise an issue in a reply brief which was not included in his original brief. TEX.R.APP.P. 38.3. Consequently, Moore has failed to preserve this issue for review. *See Few v. Few*, 271 S.W.3d 341, 347 (Tex.App.--El Paso 2008, pet. stricken); *Gray v. Woodville Health Care Center*, 225 S.W.3d 613, 620 (Tex.App.--El Paso 2006, pet. denied). When there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment was rendered, the appealing party must negate all grounds on appeal. *State Farm Fire & Casualty Company v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993); *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex.App.--Houston [1st Dist.] 2002, no pet.). If summary judgment could have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed. *Ellis*, 68 S.W.3d at 898; *Holloway v. Starnes*, 840 S.W.2d 14, 23 (Tex.App.--Dallas 1992, writ denied). The trial court below specified that it was only granting summary judgment on the Rule 166a(i) motion, but it did not specify on which challenged elements Moore had failed to produce evidence. Thus, summary judgment could have been granted on the ground that Moore had no evidence of damages. Because Moore has not properly challenged this ground on appeal, the summary judgment must be affirmed.

*Civil Assault*

In Issue One, Moore challenges the summary judgment granted in Johnson's favor on the assault claim. The elements of civil assault mirror those required for criminal assault. *Umana v. Kroger Texas, L.P.*, 239 S.W.3d 434, 436 (Tex.App.--Dallas 2007, no pet.); *Johnson v. Davis*, 178

S.W.3d 230, 240 (Tex.App.--Houston [14th Dist] 2005, pet. denied). Moore alleged in his first amended petition that Johnson "poked the Plaintiff in and around the chest area." He also asserted that Johnson intentionally, knowingly, or recklessly made contact with Moore which caused bodily injury and intentionally and knowingly threatened him with imminent bodily injury. A person commits assault if he:

> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
>
> (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
>
> (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX.PENAL CODE ANN. § 22.01(a)(Vernon Supp. 2009). Moore did not contend that Johnson knew or should reasonably have believed that Moore would regard the contact as offensive or provocative. Consequently, his petition alleged an assault only under Section 22.01(a)(1) and (a)(2). The Penal Code defines "bodily injury" to mean physical pain, illness, or any impairment of physical condition. TEX.PENAL CODE ANN. § 1.07(a)(8)(Vernon Supp. 2009).

On appeal, Moore relies on his deposition testimony to show that he adduced some evidence on each element of his assault claim. But he did not attach this evidence to his summary judgment response. While Appellees attached Moore's deposition in support of their traditional motion for summary judgment, Moore did not refer to it at all in his initial summary judgment response.[3] Accordingly, we will not consider the bulk of that evidence in reviewing this issue. *See Viasana*,

---

[3] After addressing the defendants' res judicata defense raised in their traditional motion for summary judgment, Moore's states in his initial summary judgment response that: "Additionally, plaintiff alleged that he was both threatened with imminent bodily injury and suffered bodily injury. Plaintiff testified that he went to the hospital shortly after the assault by Johnson. Still more, the municipal court found Johnson guilt [sic] of assault." This constitutes Moore's entire response to the no evidence summary judgment motion as it pertains to the assault cause of action.

296 S.W.3d at 654. However, in a supplemental summary judgment response, Moore cited two pages of his deposition testimony wherein he stated he was terrified during the confrontation with Johnson. Moore did not allege that this testimony constituted more than a scintilla of evidence on any of the elements of his assault cause of action. Rather, he cited it in response to Appellees' contention that Moore had failed to prove damages. Although it is doubtful whether Moore's summary judgment response is sufficient to have directed the trial court's attention to the applicability of this evidence, we will nevertheless address whether it raises a fact issue on each element of assault.

Under Section 22.01(a)(1), Moore was required to prove that he suffered bodily injury. The Penal Code defines bodily injury as "physical pain, illness, or any impairment of physical condition." TEX.PENAL CODE ANN. § 1.07(a)(8). Moore did not testify or offer any evidence that being poked in the chest caused bodily injury. Under Section 22.01(a)(2), Moore was required to prove that Johnson intentionally or knowingly threatened him with imminent bodily injury. Moore's testimony does not raise a fact issue on these elements. Because the trial court did not err by granting summary judgment on the assault cause of action, we overrule Issue One.

*Intentional Infliction of Emotional Distress*

In Issue Two, Moore contends the trial court erred by granting summary judgment on intentional infliction of emotion distress. The elements of the claim are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999); *Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex. 1993). To satisfy the second element, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

and utterly intolerable in a civilized community." *Twyman*, 855 S.W.2d at 621. Johnson challenged each of the four elements.

Moore's entire response was as follows:

In the days before plaintiff alleges he was forced to resign, and after the time Johnson was initially convicted of assault, the defendants allowed Johnson to have direct and close contact with the plaintiff. Plaintiff testified that this fact forced him to quit.

He made an identical recitation in his supplemental response. His response does not address the challenged elements of this cause of action nor does it reference any evidence pertinent to these elements. Because Moore failed to produce any evidence of conduct that could be construed as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," the trial court properly granted summary judgment on this cause of action. Issue Two is overruled.

*Violations of the Whistleblower Act*

In Issues Three through Six, Moore complains the trial court erred by granting summary judgment on the whistleblower cause of action. The Texas Whistleblower Act provides:

A state or local governmental entity may not suspend or terminate the employment of . . . a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

TEX.GOV'T CODE ANN. § 554.002(a)(Vernon 2004). The elements of a whistleblower claim are (1) that the plaintiff was a public employee, (2) that the defendant was a state agency or local government, (3) that the plaintiff reported in good faith a violation of law (4) to an appropriate law enforcement agency, and (5) that the plaintiff's report was the but-for cause of the defendant's suspending, firing, or otherwise discriminating against the plaintiff at the time the defendant took that action. *Guillaume v. City of Greenville*, 247 S.W.3d 457, 461 (Tex.App.--Dallas 2008, no pet.);

*see Texas Department of Human Services v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995)(explaining the causation element). A "law" is a state or federal statute, an ordinance of a local governmental entity, or a rule adopted under a statute or ordinance. TEX.GOV'T CODE ANN. § 554.001(1).

Appellees alleged in their motion that Moore had no evidence he reported in good faith that his employer or an employee violated the law. In his response, Moore claimed he reported to Johnson in July 2005 that Franquee Higgins did not identify violations of the IRC and RICA. He referenced several pages of his own deposition testimony attached to the defendants' motion for summary judgment. There, Moore testified that he reported to Johnson that he had inspected a property which Higgins had previously inspected and found items which Higgins had missed. Moore could not recall the nature of the specific items Higgins had missed or which sections of the IRC had been violated. In his sur-response, Moore added that he reported "the illegal activities of Johnson to the City Manager." In support of this assertion, Moore referred to pages of his deposition testimony where he recounted that he was "harassed" about taking time off of work to visit his ill father but Johnson was permitted to take time off of work following a serious car accident. The evidence also showed that the City Manager permitted Moore to utilize vacation time which he had not yet accrued in order to visit his father. Finally, Moore referred letters he wrote to the City regarding the hostile work environment. This evidence does not support Moore's contention that he reported illegal activities by Johnson to the City Manager. Therefore, we will restrict our review of this issue to Moore's report about Higgins.

Section 554.002(a) requires that the plaintiff report the violation in good faith. TEX.GOV'T CODE ANN. § 554.002(a). Good faith means that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience. *Wichita County, Texas v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996). The first

part of the test embodies an "honesty in fact" element. *See id.* at 784-85. This ensures that an employee believed that he was reporting an actual violation of law. *Id.* at 785. The second part of the test ensures that, even if the reporting employee honestly believed that the reported act was a violation of law, liability arises only if a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of law. *Id.* Simply stated, the good faith test includes both an objective and a subjective element. *Texas Department of Transportation v. Needham*, 82 S.W.3d 314, 320 (Tex. 2002).

Moore testified he reported to Johnson that Higgins had failed to "red tag" unspecified code violations when he inspected a home. In his summary judgment response, Moore attached a city ordinance adopting the 2000 International Residential Code and a copy of that code. Section R103 pertains to the creation of an enforcement agency and the appointment of a building official to direct it. The building official's duties and powers are established by Section R104. He is authorized and directed to enforce the provisions of the IRC with the understanding that he has the authority to interpret the code and to adopt policies and procedures to clarify its application. The building official is also authorized to inspect the premises for which permits have been issued and to enforce compliance with the code. Section R113.1 makes it unlawful for "any person, firm or corporation to erect, construct, alter, extend, repair, move, remove, demolish or occupy any building, structure or equipment regulated by this code, or cause same to be done, in conflict with or in violation of any of the provisions of this code." Section R113.4 provides: "Any person who violates a provision of this code or fails to comply with any of the requirements thereof or who erects, constructs, alters or repairs a building or structure in violation of the approved construction documents or directive of the building official, or of a permit or certificate issued under the provisions of this code, shall be subject to penalties as prescribed by law." While the building official and the inspectors designated

by him have the duty to conduct inspections and enforce the code, the IRC does not make it a violation of law for the building official or his inspectors to fail to do so.

Moore's testimony constitutes some evidence he believed that Higgins' failure to "red tag" unspecified code violations was itself a violation of some unspecified law. Thus, he offered more than a scintilla of evidence on the subjective element of the good faith test. With respect to the objective part of the test, Moore presented evidence that he was "undertrained" as a building inspector, presumably to show that his belief was reasonable given his lack of training. But Moore does not explain how his lack of training makes his belief reasonable. Moore also relied on RCIP and the job description of a building inspector, which establishes that a building inspector's job is to report code violations. But there is nothing in the record which would lead a reasonably prudent employee in similar circumstances to conclude that a building inspector who fails to report a code violation has himself violated the IRC or some other law. Because Moore failed to produce any probative evidence on the objective part of the good faith test, the trial court acted properly by granting summary judgment.

Appellees also alleged in their summary judgment motion that Moore had no evidence he made the report to an "appropriate law enforcement authority." An entity is considered an "appropriate law enforcement authority," if:

> the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to:
>
> (1) regulate under or enforce the law alleged to be violated in the report; or
>
> (2) investigate or prosecute a violation of criminal law.

TEX. GOV'T CODE ANN. § 554.002(b). The Supreme Court has clarified the standard for determining whether or not an entity is "an appropriate law enforcement authority" under the Whistleblower Act.

*Needham*, 82 S.W.3d at 318-321. The issue there was whether the Texas Department of Transportation was an appropriate law-enforcement authority to which an employee could report an alleged DWI incident involving a TxDOT employee. *Id*. at 319. In deciding the issue, the court held that it is not enough that a government entity has general authority to regulate, enforce, investigate, or prosecute. *Id*. at 319. The question is whether the entity had authority to regulate or enforce the particular law that the employee reported had been violated. *Id*. at 320. The particular law the public employee reported to have been violated is critical to the determination. *Id.* Because TxDOT has no authority to regulate or enforce the criminal laws prohibiting drunken driving, the court held that, as a matter of law, TxDOT was "not an appropriate law enforcement authority under section 554.002(b) for a public employee to report another employee's violation of Texas's driving while intoxicated laws." *Id*. at 320. But that conclusion did not end the inquiry because Needham could still obtain Whistleblower Act protection if he in good faith believed that TxDOT was an appropriate law enforcement authority as the statute defines the term. *Id.* The court held that a two-part test for good faith applies when determining if a public employee believed the governmental entity to which he reported a violation of law was an appropriate law enforcement authority. *Id.* Thus, in the context of Section 554.002(b), "good faith" means:

> (1) the employee believed the governmental entity was authorized to (a) regulate under or enforce the law alleged to be violated in the report, or (b) investigate or prosecute a violation of criminal law; and

> (2) the employee's belief was reasonable in light of the employee's training and experience.

*Id.*

Moore did not identify in his report to Johnson what law he believed Higgins had violated. Nor did he specify the law violated in his initial summary judgment response or in the sur-response.

In a supplemental response, he pointed to two criminal laws: Section 36.03 (coercion of a public servant or voter)[4] and Section 37.10 (tampering with a governmental record).[5]

Moore made his report to Johnson, a senior building inspector employed in the same department. He also claimed that he made a separate report to Johnny Bray, the Head Building Director, that Higgins admitted he could write twelve to fourteen violations on every tag but he usually just tagged one or two items. Moore did not produce any evidence showing he had a subjective good faith belief that Johnson or the Department of Building Safety had authority to investigate violations of the Penal Code.

Now on appeal, Moore argues he had a good faith belief that the Department of Building Safety and Johnson were appropriate law enforcement authorities because the Department has the authority to enforce the contents of the IRC and Johnson's duties included "investigating complaints." This argument shifts the focus away from Sections 36.03 and 37.10 of the Penal Code and back to the amorphous and non-specific allegations about Higgins' alleged violations of the IRC. While Moore presented evidence he believed Higgins had violated some law by failing to report the violations of the IRC, he did not present any evidence that he believed the Department and/or Johnson had any authority to investigate or prosecute Higgins' alleged violation of the law. There is also no evidence that a reasonably prudent employee in similar circumstances would conclude that the Department and/or Johnson had authority to prosecute Higgins for failing to report a code violation. Because Moore failed to produce any probative evidence on either the subjective or objective portion of the good faith test as it applies to Section 554.002(b), the trial court acted properly by granting summary. We overrule Issues Three, Four, and Five. Given our conclusion that

---

[4] TEX.PENAL CODE ANN. § 36.03 (Vernon 2003).

[5] TEX.PENAL CODE ANN. § 37.10 (Vernon Supp. 2009).

Moore had no evidence on these elements of his whistleblower cause of action, it is unnecessary to address Issue Six which pertains to causation. For all of these reasons, we affirm the summary judgment.

February 17, 2010

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.