ANN CRAWFORD McCLURE, Chief Justice *153 Marda Whitney sued the El Paso Independent School District (EPISD) under the Texas Whistleblower statute. TEX.GOV'T CODE ANN. § 554.002 (West 2012). The case comes to us after the trial court granted EPISD's motion for summary judgment. For the reasons explained below, we affirm.
FACTUAL SUMMARY
Whitney was a long time teacher in EPISD. For the time-period at issue, she taught a computer literacy course to sixth graders at an El Paso middle school. EPISD has two policies, relevant here, that address what a teacher may teach in the classroom. The first policy addresses discussion of religion:
The inclusion of religion in the study of history, culture, literature, music, drama, and art is essential to a full and fair presentation of the curriculum. The inclusion of religious elements is appropriate as along as the material included is intrinsic to the field of study in which it is presented and as long as it is presented objectively. ... Such studies shall not foster any particular religious tenet nor demean any religious beliefs, but shall attempt to develop mutual respect among students and advance their knowledge and appreciation of the role that religious heritage plays in the social, cultural, and historic development of civilization.
The second policy addresses discussion of controversial topics:
The District shall address controversial topics in an impartial and objective manner. Teachers shall not use the classroom to indoctrinate students with their personal beliefs regarding political or sectarian issues. ... A teacher selecting topics for discussion in the classroom shall be adequately informed about the issue and capable of providing instruction on the subject, free from personal bias.
In 2005, EPISD claimed Whitney ran afoul of these policies when, in a classroom setting, she engaged in conversations related to religion (by quoting Bible scripture) and she showed an explicit video on AIDS. On November 9, 2005, EPISD issued Whitney a formal letter of reprimand for this conduct.
Some four years later, in May 2009, a student complained that Whitney made inappropriate comments to him to the effect that he was too effeminate. While investigating that complaint, and in interviewing the students in her class, EPISD learned of other comments that it considered inappropriate under the above quoted policies.[1] Based on that investigation, Whitney received another letter of reprimand on October 9, 2009, for making comments to her sixth grade class regarding religion, sex, and politics, when they were not part of the curriculum for a computer tech applications class.[2] She was also informed this *154 was a final warning and that any further violations of policy would result in a recommendation for her proposed termination from employment.
This history set the stage for a January 2010 parent-teacher conference, when a parent complained that a few days before, Whitney had engaged the computer class on topics of religion, homosexuality, AIDS, and reported that she prayed to the students in class. The middle school principal initiated an investigation. Perhaps not surprisingly, the sixth graders had different recollections of what Whitney actually said.[3] A majority of the student interviews confirmed, however, that Whitney had discussed religion, homosexuality, and AIDS in the computer literacy class. No student recalled that she prayed during class.
On May 11, 2010, the middle school principal recommended to her superior that Whitney's employment be terminated. Two days later, EPISD's associate superintendent agreed. EPISD then notified Whitney that on July 13, 2010, the Board of Trustees would take up a motion to recommend her proposed termination. Following a closed meeting which Whitney attended, the Board gave Dr. Lorenzo Garcia, then Superintendent of the EPISD, authority to terminate her.
The Texas Education Code requires that any employee under contract be notified of any proposed termination in writing and be informed of the grounds for the action. TEX.EDUC.CODE ANN. § 21.158(a) (West 2012)("Before a teacher employed under a continuing contract may be discharged, suspended without pay, or released because of a necessary reduction of personnel, the board of trustees must notify the teacher in writing of the proposed action and the grounds for the action."). On July 20, 2010, EPISD issued Whitney a letter that gave formal notice of the proposed termination for cause. The letter specifically referenced the failure to meet the accepted standards of conduct for teaching, and attached the prior letters of reprimand, the most recent parent's complaint, and the report on the investigation of that complaint. The letter also advised Whitney of two procedural deadlines for challenging the action.
Under the Education Code and EPISD policy, she was required to notify the Board within ten days of receiving the notice of proposed termination of her intent to contest the action. TEX.EDUC.CODE ANN. § 21.159(a). By doing so, she was entitled to a Chapter 21 termination hearing as outlined by the Education Code. Id. at § 21.159(b). A Chapter 21 hearing is held before an independent hearing officer, and is conducted as would a non-jury trial in a district court. Id. at § 21.256(e). The hearing officer then generates a recommendation to the Board based on the adversarial hearing. Id. at § 21.257(d). The *155 Board may then accept or reject the hearing officer's recommendations, subject to appeal to the Commissioner of the Texas Education Agency (TEA), and then a district court. Id. at §§ 21.259, 21.301-21.307. To obtain that hearing, however, the letter informed Whitney that she needed to file a written request for a hearing with the TEA "not later than the 15th day after the date you receive this notice of proposed termination." Id. at § 21.253(a). She also needed to provide the EPISD with a copy of the request. Id.
Whitney's response to these deadlines is important to an issue in this case. On July 19, 2010, one day before she received the actual notice of proposed termination, Whitney filed a grievance with EPISD. She identified the factual basis of her grievance to include: (1) violations of TEA policy; (2) wrongful termination; (3) violation of her civil rights; and "multiple violations of federal, state and TEA laws." In an attached explanatory letter, she complained that she was not given adequate time to respond to the charges at the Board's hearing on July 13. She also claimed that she had never been informed in writing of the nature of the charges, nor asked for her side of the dispute. EPISD responded to that grievance on July 21, 2010.[4] The letter indicated that Whitney's right to review was spelled out in the Superintendent's letter to her of July 20, 2010 (i.e. pursuing a Chapter 21 hearing), and that no action would be taken on the July 19, 2010 grievance. The letter attached the EPISD's policy on employee complaints and grievance procedures. On August 3, 2010, Whitney sent a letter to the Commissioner of the TEA. In the letter, Whitney contended that she had been falsely accused of "saying and doing things in my classroom since 2005." She complained that she had been removed from the classroom as a teacher, but did not mention the pending termination. She referenced her grievance of July 19, 2010, and claimed that EPISD had not responded to that grievance. The letter recited that the District had violated numerous provisions of the Texas Administrative Code, the Education Code, and Whitney's civil rights. She claimed to have reported "about the many violations of my rights, as well as other employees" to the FBI, the Office of Civil Rights, the EEOC, the Texas Attorney General, the U.S. Department of Education, and a local state senator. The letter ended with a request to meet and further discuss her complaints, but did not specifically ask for a hearing examiner or hearing. The letter was not carbon copied to EPISD.
The TEA responded to this letter by urging her to pursue the EPISD's internal process for resolving the July 19 grievance. If EPISD failed to provide her a timely hearing, she could then appeal to the TEA. Otherwise, the response the TEA had no jurisdiction over the matters raised in Whitney's complaint letter.
Under the Education Code, had Whitney invoked a Chapter 21 hearing to challenge her proposed termination, the Board would have not acted until the hearing officer made recommendations following the hearing. TEX.EDUC.CODE ANN. §§ 21.257 - 21.259. Because EPISD had not received notice that Whitney had sought a hearing, it informed her on August 18, 2010, that the EPISD Board would meet on August 24, 2010, to consider terminating her contract immediately. They did so, and terminated *156 her employment effective as of September 15, 2010.
The TEA also ultimately concluded that Whitney had not validly requested a Chapter 21 hearing on her termination. Whitney's August 3, 2010 letter never specifically mentioned the termination, nor asked for the appointment of a hearing examiner. The TEA did conclude, however, that Whitney's August 4 letter invoked the TEA's jurisdiction to challenge EPISD's refusal to entertain the July 19 grievance. She had therefore preserved the right to appeal under TEX.EDUC.CODE ANN. § 7.057 (West Supp. 2016)("[A] person may appeal in writing to the commissioner if the person is aggrieved by ... actions or decisions of any school district board of trustees that violate ... the school laws of this state."). An appeal under that section, however, expressly cannot include a termination decision that otherwise could be heard under Chapter 21. Id. at § 7.057(e)(1).
When the TEA heard Whitney's Section 7.057 appeal of her grievance, it dismissed the complaint for lack of jurisdiction. The Commissioner made a specific fact finding that Whitney's August 3, 2010 letter did not request the assignment of a hearing examiner. Consequently, the Chapter 21 hearing procedures for her termination was never invoked. The TEA had allowed Whitney to amend the August 3 letter, which the TEA considered to be a "Petition for Review." The amendment claimed EPISD violated Section 21.301(a), which is the statutory basis for a teacher to appeal a termination decision made at the end of the Chapter 21 hearing process. The TEA rejected that argument because Whitney had never invoked a Chapter 21 hearing, and thus any decision of EPISD was not grounded in the Chapter 21 hearing process.
PROCEDURAL HISTORY
Whitney filed this suit on October 15, 2012, alleging a violation of the Texas Whistleblower Act. The suit claims that in June 2009, she reported to the TEA that a counselor in charge of handling the Texas standardized tests at her school was not certified. She also alleged that she had complained to the Superintendent about the bilingual program at her school, and the mishandling of a grant. Whitney complained that her termination was in retaliation for these reports. EPISD answered, asserting a plea to the jurisdiction as a part of its answer. After some discovery, EPISD moved for summary judgment.
The summary judgment motion advanced five challenges to the whistleblower claim: (1) Whitney did not in good faith report a violation of law; (2) the report was not made to an appropriate law enforcement authority; (3) EPISD did not terminate her for making the report; (4) the claim was barred because it was not administratively pursued; and (5) the suit was untimely. The motion attached numerous records documenting the chronology of events that we have recounted above, and included the affidavit of EPISD's Executive Director of Employee Relations, Vincent Sheffield, at the time of the termination. He claimed to be "personally acquainted with employment terminations of EPISD teachers in 2010, including the circumstances leading up to the termination of Whitney's employment. Sheffield had signed the final termination letter. He further swore that to his knowledge Whitney's "employment was terminated for the reasons stated in the [July 20 notice of proposed termination, with attachments] and for no other reason." Whitney failed to file any response to the motion for summary judgment, and the trial court granted the motion, without specifying the *157 grounds.[5]
STANDARD OF REVIEW
EPISD contends that it filed a hybrid motion for summary judgment, including both traditional and no-evidence grounds. TEX.R.CIV.P. 166a(b) and (i). Whitney counters that only a traditional motion is before us. Because the motion attached evidence that extensively addresses each of the grounds discussed below, we conclude that on this record the distinction is immaterial.[6] Our ultimate inquiry is whether there is more than a scintilla of probative evidence raising genuine issues of material fact. See TEX.R.CIV.P. 166a(c), (i).
We review a summary judgment de novo. Travelers Ins. Co. v. Joachim , 315 S.W.3d 860, 862 (Tex. 2010). Evidence favorable to the non-movant is taken as true in deciding whether there is a disputed issue of material fact. Fort Worth Osteopathic Hospital, Inc. v. Reese , 148 S.W.3d 94, 99 (Tex. 2004) ; Tranter v. Duemling , 129 S.W.3d 257, 260 (Tex.App.-El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. Fort Worth Osteopathic Hospital , 148 S.W.3d at 99. Undisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence. City of Keller v. Wilson , 168 S.W.3d 802, 814 (Tex. 2005).
Whitney raises four issues with subparts challenging, as she must, each of the five possible grounds alleged in the motion for summary judgment. State Farm Fire & Casualty Company v. S.S. , 858 S.W.2d 374, 381 (Tex. 1993) (when there are multiple grounds for summary judgment and the order does not specify the ground on *158 which the summary judgment was rendered, the appealing party must negate all grounds on appeal). We need address only two of those issues.
INITIATION OF ADMINISTRATIVE REMEDIES
The Whistleblower Act requires the public employee to initiate action under any applicable grievance or appeal procedures relating to the suspension, termination, or adverse personnel action. TEX.GOV'T CODE ANN. § 554.006. Failure to do so acts as a jurisdictional bar to relief and cuts off a grievant's right to judicial review. El Paso Indep. Sch. Dist. v. Kell , 465 S.W.3d 383, 386 (Tex.App.-El Paso 2015, pet. denied) ; Aguilar v. Socorro Indep. Sch. Dist. , 296 S.W.3d 785, 790 (Tex.App.-El Paso 2009, no pet.) ; see also TEX.GOV'T CODE ANN. § 311.034 (West 2013) ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."). The goal of Section 554.006 is to allow the governmental entity "the opportunity to investigate and correct its errors and to resolve disputes before incurring the expense of litigation." Fort Bend Indep. Sch. Dist. v. Gayle , 371 S.W.3d 391, 395 (Tex.App.-Houston [1st Dist.] 2012, pet. denied).
The TEA concluded, both informally through a letter ruling and later by the decision of its Administrator, that Whitney did not invoke the Chapter 21 procedure for challenging her proposed termination. At best, she initiated an appeal under Section 7,057, which by statute does not overlap with Chapter 21 procedures. Id. at § 7.057 (e)(1)("This section does not apply to ... a case to which Subchapter G, Chapter 21, applies...."). Even at that, her Section 7.057 appeal was eventually dismissed for want of jurisdiction. The TEA evidently concluded that she was attempting to appeal her termination through that procedure.
The situation here is remarkably similar to the facts in Kell which we decided two years ago. In Kell , a teacher failed to initiate a Chapter 21 hearing, but tried to grieve her termination through the EPISD's internal grievance procedure. 465 S.W.3d at 385. We concluded that the "Chapter 21 hearing appears to be not only the applicable procedure under the Act, but possibly the only way a term contract teacher may challenge a proposed termination under the Education Code." Id. at 387. Because the teacher in Kell had not pursued the Chapter 21 hearing, we concluded her Whistleblower suit was barred. Id. at 388.
Whitney argues, however, that her July 19 grievance, in conjunction with her August 3 letter to the TEA, is sufficient to meet the terms of the statute. The problem with her argument is that the TEA has rejected that position, and issued a specific finding of fact and conclusion of law to the contrary. As the TEA finding grew out of a Section 7.057 proceeding, that finding must be challenged in a Travis County lawsuit, if at all. TEX.EDUC.CODE ANN. § 7.057(d) ("A person aggrieved by an action of the agency or decision of the commissioner may appeal to a district court in Travis County."). Whitney provides no basis or rationale for how we would overcome that agency finding, and indeed, we discern none in the record. We conclude that Whitney did not initiate the applicable grievance procedure that is a prerequisite for bringing her Whistleblower claim.[7] Even had she initiated a proper *159 administrative challenge, we also conclude that EPISD disproved at least one essential element of her claim.
CAUSATION
Under the Whistleblower Act, Whitney must establish that: (1) she was a public employee; (2) she made a good faith report of a violation of law by her employing governmental entity or another public employee; (3) she made the report to an appropriate law-enforcement authority; and (4) she suffered retaliation as a result of making the report. TEX.GOV'T CODE ANN. § 554.002(a) ; Tex. Comm'n on Envt'l. Quality v. Resendez , 450 S.W.3d 520, 522 (Tex. 2014) (per curiam). EPISD's motion challenged the second, third, and fourth elements. We need only address the causation element.
To establish causation in a Whistleblower Act case, the public employee must demonstrate that they were terminated, suspended, or suffered some adverse employment action that would not have occurred when it did if the employee had not reported a violation of law. City of Fort Worth v. Zimlich , 29 S.W.3d 62, 67 (Tex. 2000). That is, a plaintiff must establish a "but for" causal nexus between the report of the illegal activity and the employer's prohibited conduct. Canutillo Indep. Sch. Dist. v. Farran , 409 S.W.3d 653, 656 (Tex. 2013) ; Moore v. City of Wylie , 319 S.W.3d 778, 784 (Tex.App.-El Paso 2010, no pet.). However, the plaintiff need not show that the whistleblower's report was the sole reason for the adverse personnel action. Texas Dept. of Human Services of State of Tex. v. Hinds , 904 S.W.2d 629, 634 (Tex. 1995).
Whitney might have met that burden through circumstantial evidence. Zimlich , 29 S.W.3d at 69, citing Continental Coffee Prods. Co. v. Cazarez , 937 S.W.2d 444, 450 (Tex. 1996). But at a minimum, she had to demonstrate that the person who took the adverse employment action-the decision-maker-knew of her report of illegal conduct. Alief Indep. Sch. Dist. v. Perry , 440 S.W.3d 228, 238 (Tex.App.-Houston [14th Dist.] 2013, pet. denied) ("Obviously, a decision-maker could not fire an employee because of the employee's report of alleged illegal conduct if the decision-maker did not even know the employee made such a report."); Harris County. v. Vernagallo , 181 S.W.3d 17, 25 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (reversing judgment when there was no evidence decision-maker was aware of report); cf. Canutillo Indep. Sch. Dist. v. Farran , 409 S.W.3d 653 (Tex. 2013) (finding no evidence of causation when report was made after termination decision).
The Whistleblower Act also allows for a presumption, "subject to rebuttal," of the causal connection if the employee is terminated or suspended not later than 90 days after the reported violation of law. TEX.GOV'T CODE ANN. § 554.004(a). However, the presumption does not shift the burden of proof and stands only in the absence of contrary evidence. Tex. Natural Res. Conservation Comm'n v. McDill , 914 S.W.2d 718, 723 (Tex.App.-Austin 1996, no writ). Once sufficient evidence is produced to support a finding of the non-existence of the causal connection between *160 the termination or suspension and the reported violation of law, the case proceeds as if no presumption had ever existed. Id. at 724.
The summary judgment evidence included two emails sent by Whitney to the TEA in June 2009 that are her "report" of a violation of law:[8]
I am a teacher and our counselor handled the TAKS test-distribution, administration, etc. We found out from the SBEA website that this counselor has a 'Inactive' status on her credentials. Would that mean that the TAKS tests at our school are invalid? I would appreciate your input. Thanks
This is my 2nd request for information! I would like to know if the person handling the TAKS tests does not have a valid certificate, if that is legal? This person was responsible for all the TAKS tests at a particular school and their credentials are in an Inactive status. Does that affect the District and the school? Please reply asap. Thanks
The TEA responded that the agency could not appropriately reply by email, but it would speak to her further if she called a provided phone number. The summary judgment record also includes a March 2008 email from the TEA to Whitney responding to some earlier question she apparently raised about students removed from school during standardized testing. The email asked Whitney to communicate with a specific person and provide the TEA with additional information. The emails do not reveal whether they were copied to anyone at EPISD. When asked on deposition, Whitney had no knowledge that anyone from EPISD was aware of the emailed reports and she had no information that these emails had anything to do with her termination. And while Whitney asks us to take judicial notice that the current TEA website reflects it would include the school district in any of its investigations, the text of these emails does not suggest that any investigation was ever done.[9]
Whitney's August 3, 2010 letter to the TEA referenced other complaints that she had filed with the FBI, the Department Education, the Texas Attorney General, and a state senator. In her deposition, Whitney stated she was either unaware of, or denied, that anyone from the EPISD knew of these additional reports.
The summary judgment record does contain the Executive Director of Employee Relations claim that Whitney was terminated *161 for the reasons outlined in the notice of proposed termination, "and for no other reason." The reasons cited in the attachments to the notice of proposed termination include violations of district policy prohibiting discussion of religion and controversial topics outside the curriculum of her computer class. Whitney can point to nothing in the summary judgment record that creates a genuine issue of material fact to refute that claim.
We disagree with Whitney that the mere timing of events is sufficient to create a genuine issue of material fact. EPISD's complaints about her classroom conduct, first documented with a letter of reprimand in 2005, occurred years before the June 2009 reports. It is true that EPISD temporarily reassigned her to different duties on August 14, 2009, some two months after the June emails. The reassignment arose from the EPISD's investigation of her May 2009 conduct. That investigation lead to an October 2009 letter of reprimand and not her termination. Her petition never mentions, much less alleges, that the October letter of reprimand was improper or related to her termination. Instead, her petition complains of the January 2010 suspension following the January 2010 parent complaint. Because that event was some seven months after her reports, she is not entitled to the presumption under Section 554.004(a).
Nor does she offer evidence of any other circumstance that creates a genuine issue of material fact on causation. Other than a few generic statements in her unsworn correspondence that the reasons for termination were unfounded, her sworn deposition testimony supports most of the specific reasons cited by the EPISD for her termination.[10] Whitney does not advance any evidence that other similarly situated employees who had not made comparable reports were treated any differently. At best, the evidence suggested by Whitney is the sort of "meager circumstantial evidence" that "could give rise to any number of inferences, none more probable than another." Kingsaire, Inc. v. Melendez , 477 S.W.3d 309, 317 (Tex. 2015), quoting Hancock v. Variyam , 400 S.W.3d 59, 70 (Tex. 2013).
CONCLUSION
We overrule Issue One in which Whitney contends the trial court erred in granting summary judgment because EPISD failed to disprove an essential element of her whistleblower case. To the contrary, we conclude EPISD disproved that Whitney initiated an appropriate grievance, and disproved that the termination was caused by any report that she may have made. We decline to rule on the other grounds. TEX.R.APP.P. 47.1. Accordingly, we do not reach Issue Two (failure to make a good faith report to a law-enforcement), or Issues *162 Three and Four (limitations). We affirm the judgment of the trial court below.
Hughes, J., not participating

A letter of reprimand stated in part:
During the course of the investigation additional allegations were made by students in your classroom. They alleged that you frequently made comments to them about God, read passages from the Bible, told students that the middle finger meant 'you want to have sex,' and the Texas Longhorn sign was satanic. Finally, students alleged that you made inappropriate comments about President Obama and told them that the world was going to end and everyone was going to die.

The month before, Whitney had also been given a letter of reprimand for discussing religion with another employee, after the employee request that she not do so.

The investigation report recites some of the student's divergent recollections of Whitney's statements pertinent to religion: "Haiti got destroyed by earthquake because they didn't believe in God. Also, two major earthquakes are coming this way because people don't believe in God anymore." "She was talking about starting her Bible study and if anyone wanted to join." "That you can pray in class on your own whenever you want." "That we have the freedom of religion." "[W]e should pray if we want to and that it is not against the law to pray in school."
The students also had mixed recollections of the statements about homosexuality: "To pray for our country we are not supposed to be having gays." ''That it was wrong to be gay." "That you shouldn't be gay." "[S]ince prayer stopped in school that the earth allowed gays to be married and that is also why girls are getting together." "[Whitney used the] example of Haiti that God was mad because the homosexuals didn't supposed to get married."

The letter is dated actually dated June 21, 2010, but both parties appear to agree this was a typographical error.

Whitney's trial counsel withdrew prior to the scheduled summary judgment hearing. The trial judge allotted her additional time to secure new counsel, but she was unable to do so by the time of the reset hearing. Counsel does represent her on appeal.

In Buck v. Palmer , 381 S.W.3d 525 (Tex. 2012) the court noted that when both parties bring forth evidence in response to a hybrid motion, the distinction between a traditional and no evidence is "of no import." Id. at 527 n.2 ; see also Neely v. Wilson , 418 S.W.3d 52, 59 (Tex. 2013) (stating the same). Logically, the same would be true when the movant presents evidence that demonstrates an entitlement to summary judgment. Under a traditional motion for summary judgment, when the moving party establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence which raises a genuine issue of material fact. See City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979). And likewise, in a no evidence motion, once an element of a claim or defense is challenged, the non-movant then needs to present some evidence raising a genuine issue of material fact. Wade Oil & Gas, Inc. v. Telesis Operating Company, Inc. , 417 S.W.3d 531, 540 (Tex.App.-El Paso 2013, no pet.). Thus, the paths of a traditional and no-evidence motion will cross when the movant has presented an evidentiary basis meeting the initial burden demonstrating a right to summary judgment.
Even were this not the correct rule, we would conclude the text of the motion fairly informed the average reader that it asserted no-evidence grounds, and alternative traditional grounds. Moreover, if there were any confusion on what motion had been filed, Whitney should have raised the issue below by filing a special exception. See McConnell v. Southside Indep. Sch. Dist. , 858 S.W.2d 337, 342-43 (Tex. 1993) (plurality op.)(noting in dicta that a non-movant wishing to complain on appeal that the grounds relied on by the movant are unclear or ambiguous should file special exception); Cohen v. Landry's Inc. , 442 S.W.3d 818, 822-23 (Tex.App.-Houston [14th Dist.] 2014, pet. denied) (party complaining of ambiguity between no evidence and traditional motion must raise issue to trial court and obtain ruling); Franco v. Slavonic Mut. Fire Ins. Ass'n, 154 S.W.3d 777, 784-85 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (same).

Failing to initiate a grievance also implicates when suit must be filed. A plaintiff must file a Whistleblower suit within ninety days of the termination, suspension, of adverse personnel action. Tex.Gov't Code Ann. § 554.006(a). The time period is tolled during the pendency of any grievance procedure. That is, if a grievance is initiated within ninety days, then the time spent exhausting the administrative remedy is excluded from the limitation period. Id. at § 554,006(b), (c). The employee must then file suit within thirty days of the exhaustion of the procedures. Id. at § 554.006(d). While we conclude that Whitney pursued the wrong administrative procedure, as did the teacher in Kell , we decline to reach the statute of limitations implications of that error here.

EPISD also challenges whether these emails constitute a good faith report of a violation of law to an appropriate agency. We need not reach those issues and assume, without deciding, that the described emails are reports as contemplated by the Act. Whitney's petition also alleges two additional reports-one to the Superintendent complaining of a bilingual program and one about the mishandling of a grant. An internal report within the EPISD would generally not qualify as a report to an appropriate agency. Canutillo Indep. Sch. Dist. v. Farran , 409 S.W.3d 653, 655 (Tex. 2013) (per curiam). Whitney does not contend on appeal that either of these two other reports are relevant to the issues before us.

EPISD filed a motion to strike portions of Whitney's Reply Brief and attachments to the brief that included "screen shots" of the TEA's website. Whitney responded that we could take judicial notice of the material appended to her brief. She primarily used this material to argue that the TEA was an appropriate law enforcement agency for the purpose of receiving reports on the administration of standardized tests-an issue we do not reach. We accordingly overrule the motion to strike as moot. With regard to taking judicial notice of adjudicative facts from websites, this court recently wrote on that issue in City of El Paso v. Fox , 458 S.W.3d 66, 71 (Tex.App.-El Paso 2014, no pet.) (taking judicial notice of City Council meeting minutes in appeal on plea to the jurisdiction).

For instance, the summary judgment record includes this deposition exchange:
Q. Okay. And in those classes, you made the statement that Barack Obama was a Muslim, correct?
A. Yes.
Q. You made the statement that he was an evil man, correct?
A. Yes.
Q. Okay. You made a statement that a hurricane in Haiti had been God's punishment of the Haitian people, correct?
A. Yes.
Q. That was because they were voo-doo-they practiced voo-doo?
A. Yes.
Q. You talked about the origin of AIDS in Africa, correct?
A. Yes.
Q. Okay. What did you tell your students about the origin of AIDS in Africa?
A. It started with a monkey having sex with a person.
Q. Okay. You told this to your sixth-grade tech applications class.
A. Yes.