COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

EL PASO INDEPENDENT SCHOOL
DISTRICT,

§

No. 08-14-00056-CV

§

Appeal from the

Appellant,

§

346th District Court

v.

§

of El Paso County, Texas

ANNA LUISA KELL,

§

(TC# 2013DCV2275)

Appellee.

§

## O P I N I O N

Appellant El Paso Independent School District ("EPISD") challenges the trial court's denial of its motion for summary judgment. In five issues, EPISD contends that the trial court lacked jurisdiction over Anna Luisa Kell's whistleblower claim because she invoked the wrong internal grievance procedure necessary to challenge her termination and thus lost her right to judicial review. We reverse and render judgment for EPISD.

### BACKGROUND

This case arises out of the El Paso Independent School District cheating scandal and the subsequent wave of EPISD personnel firings in its wake. The ensuing federal corruption prosecutions have all been heavily publicized in both the local and national media. As is our duty, we recite only those facts that appear in the record and consider only the narrow legal

question presented.

Beginning in 2006 and continuing on through August 2011, EPISD Superintendent Lorenzo Garcia directed EPISD personnel to manipulate grades, attendance records, and test scores at Bowie High School on El Paso's South Side in order to obtain federal funding under the U.S. Department of Education's No Child Left Behind initiative. In 2008, Appellee Anna Luisa Kell assumed a position as assistant principal at Bowie High School under a term contract. As explained in further detail below, EPISD alleges that Kell knew about and actively participated in various aspects of Garcia's scheme.

In 2010, the U.S. Department of Education audited EPISD, and the Federal Bureau of Investigation opened a public corruption inquiry into the cheating allegations. On June 13, 2012, the U.S. Attorney for the Western District of Texas indicted Garcia for conspiracy, alleging that Garcia and at least six unindicted co-conspirators artificially inflated state and federal accountability scores to secure federal education funding. Garcia pleaded guilty and received a jail sentence.

In the aftermath of Garcia's guilty plea, the Texas Education Agency placed EPISD on probation, appointed a district monitor, and, under threat of sanctions, directed EPISD to hire a forensic auditor who could "recommend appropriate personnel actions to the board related to reporting requirements and staffing changes, including termination of staff as appropriate." EPISD began a bevy of administrative actions based on those recommendations in October and November 2012. Bowie High School's principal, an assistant principal, and a director of Title I Schools all resigned in lieu of termination, and the director of guidance services retired. During this time, EPISD placed Kell on administrative leave.

***Kell Receives Notice of Termination***

2

In December 2012, the TEA Commissioner appointed a new interim superintendent and elevated EPISD's monitor into a Conservator, in essence giving the conservator almost complete control over EPISD and veto power over any decision made by the superintendent or the elected Board of Trustees. *See* TEX.EDUC.CODE ANN. § 39.111 (West 2012)(outlining powers of TEA conservator). The Conservator approved the private auditor's personnel recommendations, and on December 18, 2012, the Board of Trustees directed the interim superintendent to give Kell notice that she would be terminated and her contract non-renewed. In the proposed termination order, EPISD alleged that Kell *inter alia* participated in grade manipulation and improper student retentions as part of Garcia's cheating scheme.

Chapter 21, Subsection F of the Texas Education Code establishes a procedure ("a Chapter 21 termination hearing") by which teachers[1] may challenge a proposed termination order at an adversarial administrative hearing presided over by an independent hearing officer under the same procedural conditions as a bench trial. TEX.EDUC.CODE ANN. § 21.253 (West 2012). Under this subsection, if the teacher desires a hearing, it must be requested within fifteen days of receiving the proposed termination notice. TEX.EDUC.CODE ANN. § 21.253. The employee retains the right to appeal any decision to the TEA Commission and, upon administrative exhaustion, to obtain judicial review in state district court. TEX.EDUC.CODE ANN. §§ 21.301, 21.307 (West 2012). It is undisputed that Kell never requested a Chapter 21 administrative hearing to challenge her termination. On January 18, 2013, EPISD notified Kell in writing that it had terminated her employment.

### Kell's Post-Termination Grievance and EPISD's Internal Policies

On March 15, 2013, Kell lodged a grievance with the Board of Trustees under Board

---

[1] "Teacher" is broadly defined in the Education Code to include "a superintendent, principal, supervisor, classroom teacher, school counselor, or other full-time professional employee who is required to hold a certificate issued under Subchapter B [FN1] or a nurse." TEX.EDUC.CODE ANN. § 21.201(1)(West Supp. 2013).

Policy DGBA, a local district rule. That policy establishes a review process for EPISD's employment terminations and suspensions, but specifies that an adverse employment action "may be the subject of complaint under this policy only if the District does not otherwise provide for a hearing on the matter." The Board Policy specifically addresses "Whistleblower Complaints," stating: "Employees who allege unlawful discrimination or retaliation for reporting a violation of law to an appropriate law enforcement authority shall invoke this policy not later than 90 days after the date the alleged violation occurred or was discovered by the employee through the use of reasonable diligence. The grievant shall deliver his or her complaint to the Superintendent or designee." The policy further states that "Before bringing suit, an employee who seeks relief under Government Code Chapter 554 (whistleblowers) must initiate action under the District's grievance or appeal procedures relating to suspension or termination of employment or adverse personnel action."

In her grievance, Kell contended that she was fired in retaliation for cooperating with the FBI investigation and reporting wrongdoing by EPISD personnel to law enforcement in June and October 2011. She also maintained that she did not initiate a Chapter 21 proceeding because Chapter 21 "does not address whistleblower complaints," that the Whistleblower Act gave her ninety days to file a grievance, and that Board Policy DGBA was her only means of relief. The superintendent denied her request for review, stating that she failed to timely pursue her Chapter 21 administrative remedies and that EPISD fired her because of misconduct and not for cooperating with federal authorities. She appealed to EPISD's Board of Managers, who affirmed her termination.

Kell then filed suit in district court. EPISD moved for summary judgment, which the trial court denied. EPISD appealed. We have interlocutory jurisdiction to review the summary

4

judgment denial with respect to the narrow issue of trial court jurisdiction. TEX.CIV.PRAC.&REM.CODE ANN. § 51.014(8)(West 2015); *Thomas v. Long*, 207 S.W.3d 334, 336 (Tex. 2006).

## ANALYSIS

Before a state employee claiming whistleblower status can sue her employer in district court for retaliation under the Texas Whistleblower Act, she must first invoke her employer's "applicable grievance or appeal procedures" within ninety days. *See* TEX.GOV'T CODE ANN. § 554.006(a)(West 2012). Failure to timely initiate administrative action acts as a jurisdictional bar to relief and cuts off a grievant's right to judicial review. *Aguilar v. Socorro Indep. Sch. Dist.*, 296 S.W.3d 785, 790 (Tex. App.--El Paso 2009, no pet.).

EPISD raises five issues on appeal.[2] Issue One is dispositive.[3] Here, the question is whether Kell preserved her right to judicial review and invoked EPISD's "applicable" grievance procedure when she forewent a statutory Chapter 21 termination hearing prior to termination and instead filed a grievance under EPISD's local rules nearly two months after her termination was final, but within ninety days of notice. In construing the Education Code and EPISD's own internal policies, we conclude that she did not.

### *Standard of Review and Applicable Law*

We review summary judgment orders *de novo*, determining whether there exist any genuine issues of material fact and if the movant is entitled to judgment as a matter of law. *Thomas*, 207 S.W.3d at 339-40. We review questions of statutory construction *de novo*, with our primary objective being to give effect to the Legislature's intent. *Miller Weisbrod, L.L.P. v.*

---

[2] Kell maintains we should read the District's issues as waived in their entirety because the District failed to concisely state them in its Issue Presented section. We decline to do so.

[3] We do not reach the merits of Issues Two through Five because they are unnecessary to the resolution of this appeal. TEX.R.APP.P. 47.1

5

*Llamas-Soforo*, No. 08-12-00278-CV, 2014 WL 6679122, at *2 (Tex.App.--El Paso Nov. 25, 2014, no pet.). "We do so by looking first and foremost at the statutory text, reading the words and phrases in context and construing them according to the rules of grammar and common usage." *Id*. "Each word, phrase, or expression must be read as if it were deliberately chosen, and we will presume that words excluded from a provision were excluded purposefully." *Id*. "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011).

When two statutes conflict, we strive to harmonize the two statutes, if possible. *Tex. Indus. Energy Consumers v. CenterPoint Energy Hous. Elec., L.L.C.*, 324 S.W.3d 95, 107 (Tex. 2010); *cf.* TEX.GOV'T CODE ANN. § 311.026(a)(West 2013)(if generally applicable laws conflict with specific or local laws, court should endeavor to give both meaning if able). Where reconciliation of two statutes is not possible, "it is the duty of the courts to resolve inconsistencies and effectuate the dominant legislative intent." *Tex. Dep't of Public Safety v. Schaejbe*, 687 S.W.2d 727, 728 (Tex. 1984); *see also Nat'l Media Corp. v. City of Austin*, No. 03-12-00188-CV, 2014 WL 4364815, at *2 (Tex.App.--Austin Aug. 27, 2014, no pet.)(mem. op.). Generally speaking, specific or special statutory provisions will prevail as exceptions to a generally applicable statute "unless the general provision is the later enactment and the manifest intent is that the general provision prevail." TEX.GOV'T CODE ANN. § 311.026(b); *see also Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 86 (Tex. 2006). Further, "if statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails." TEX.GOV'T CODE ANN. § 311.025(a).

### *Analysis*

At the outset, we recognize the fact—raised by neither party—that EPISD issued Kell a notice of contract termination *and* non-renewal, and that termination and non-renewal of a term employee's contract implicate separate provisions of the Education Code with separate hearing procedures. *Compare* TEX.EDUC.CODE ANN. § 21.251 *et seq*. (West 2012)(term contract termination procedure) *with* TEX.EDUC.CODE ANN. § 21.207 (West 2012)(term contract non-renewal procedure). We operate under the assumption that the statutory Chapter 21 termination proceeding subsumes any contract non-renewal claims.

After reviewing the Education Code, we agree with EPISD and with *amicus curiae* that the Chapter 21 hearing appears to be not only the applicable procedure under the Act, but possibly the only way a term contract teacher may challenge a proposed termination under the Education Code. "Whether a regulatory scheme is an exclusive remedy depends on whether the Legislature intended for the regulatory process to be the exclusive means of remedying the problem[.]" [Internal quotation marks omitted]. *City of Waco v. Lopez*, 259 S.W.3d 147, 153 (Tex. 2008)(determining that Texas Commission on Human Rights Act supplanted any remedies offered by Texas Whistleblower Act where public employee alleged retaliation for reporting age and race discrimination).

Here, the Education Code creates a highly formalized, quasi-independent administrative proceeding that takes place under the same conditions as a bench trial for teachers to challenge proposed terminations. TEX.EDUC.CODE ANN. § 21.256(e). The Texas Rules of Evidence apply, and the hearing examiner may only render a decision based on admissible evidence. *Id*. at §§ 21.256(d)-(e). The teacher has the right to representation, the right to hear evidence, the right to cross-examine witnesses, and the right to present evidence. *Id.* at § 21.256(c). The school district must prove its termination allegations by a preponderance of the evidence. *Id.* at

7

§ 21.256(h). This comprehensive procedure strongly suggests that the legislature intended for teachers to use this process to challenge terminations. Our reading of the statute is bolstered by documents in the legislative record indicating that the creation of the Subsection F procedure:

> [W]ould streamline the long, drawn out hearing and appeals process for handling contract disputes between school districts and educators on term contracts. The current hearings and appeals process is overly and unnecessarily cumbersome. CSSB 1 would ensure that educator contract disputes are handled efficiently, would protect teachers' due process rights and expand teachers' rights by allowing them to request a hearing examiner to hear their case.

House Research Org., Bill Analysis, Tex. S.B. 1, 74th Leg., R.S., at 20 (1995).[4]

Even if Chapter 21 hearings are not the exclusive vehicle through which a termination may be challenged under the Education Code, Kell's reliance on EPISD's internal grievance policy in this case is misplaced. The policy itself specifies that it applies only when no other proceedings are available. It also states that "[b]efore bringing suit, an employee who seeks relief under Government Code Chapter 544 (whistleblowers) must initiate action under the District's grievance or appeal procedures relating to . . . termination of employment . . . ." EPISD's grievance procedures relating to termination of employment are those set out by statute in Chapter 21, Subsection F. Simply put, the terms of the policy itself redirect Kell to the Chapter 21 process, and Kell has not shown that any alternate processes exist.

---

[4] We acknowledge a linguistic discrepancy in the Education Code that gives us pause in reaching the conclusion that Chapter 21 hearings are *exclusive* remedies in termination situations. A school district may employ teachers under one of three kinds of contracts: probationary, continuing, and term. *See* TEX.EDUC.CODE ANN. §§ 21.201-.213 (West 2012 & Supp. 2013). Each type of contract is subject to differing termination and contract renewal procedures. The Education Code provision setting out the termination framework for *continuing* contract teachers makes clear that "[i]f the teacher desires *to protest* the proposed action . . ., the teacher must notify the board of trustees in writing not later than the tenth day after the date the teacher receives notice[.]" [Emphasis added]. TEX.EDUC.CODE ANN. § 21.159(a)(West 2012). By contrast, the provisions governing the termination process for *term contract* employees provide that Subsection F, establishing the procedures for a termination hearing, applies "*if a teacher requests a hearing* after receiving notice of the proposed decision to . . . terminate the teacher's . . . term contract before the end of the contract period," except in the event of a declared financial exigency. [Emphasis added]. TEX.EDUC.CODE ANN. § 21.251(a)(2) & (b)(3)(West 2012). Unlike the termination provisions with respect to continuing contract employees, which explicitly set a written complaint as the only means to initiate a challenge to the termination, the provisions governing term contract employees never explicitly state that a Chapter 21 hearing is a condition precedent to challenging EPISD's proposed termination order, only that a timely request is a condition precedent for a hearing.

Kell argues that the 90-day filing deadline in the Whistleblower Act supersedes the 15-day deadline found in the Chapter 21 hearing provision, thereby holding open the grievance filling window open past 15 days for whistleblower claimants.  We need not reach this issue.[5]  The question before the Court is whether Kell invoked the applicable administrative procedure under the Act.  Here, the applicable procedure, as established by the Education Code and EPISD's own internal policy, was the Chapter 21 hearing procedure.  Even if the Whistleblower Act extended the deadlines set by the Education Code, or even if Kell could have availed herself of the discovery rule to toll the deadline, she never attempted to invoke the Chapter 21 hearing.  As such, she lost her right to judicial review under the Act.  The TEA's ruling is final, and the trial court had no jurisdiction to entertain any challenge to that order under these facts.

Issue One is sustained.  We reverse the trial court's order and grant summary judgment to EPISD on jurisdictional grounds.


June 10, 2015
                                        YVONNE T. RODRIGUEZ, Justice

Before Rodriguez, J., Larsen, Senior Judge, and Perez, Judge
Larsen, Senior Judge and Perez, Judge (Sitting by Assignment)

---

[5] We recognize that depending on how the conflict between the 90-day deadline in the Whistleblower Act and the 15-day deadline in Chapter 21 of the Education Code is resolved, these conflicting statutes could essentially create a two-tiered justice system in which teachers with whistleblower claims would lose their right to judicial review seventy-five days before other state employees.  We cannot say if this was the Legislature's intent, or if it was the product of inadvertance.  In any event, we invite the Legislature to re-consider the interaction between these two laws and provide future clarity to the courts so that we may properly fulfill the Legislature's dominant intent, whether it be expeditious and final resolution of teacher-district disputes or preserving an educator's right to judicial review in whistleblower cases beyond the fifteen days provided for other employment claims.