

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BRYAN P. FERRELL, | § | No. 08-17-00065-CV |
| Appellant, | § | Appeal from the |
| v. | § | 120th District Court |
| THE *UNIVERSITY* OF TEXAS SYSTEM, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2014DCV4105) |
| | § | |

## **O P I N I O N**

With the cost of higher education on the rise each year, more college-aged adults find that they are not only students of their chosen university; they are also their university's part-time employees. As this case illustrates, student employment is not always free from occupational hazards. The question of what happens when a student-employee is injured on the job forms the backdrop for this dispute over the amount of workers' compensation a public university in the University of Texas System may owe a student worker.

In this case, the Texas Department of Insurance Division of Workers' Compensation (DWC or the Division) awarded Appellant Bryan Ferrell workers' compensation benefits totaling 75 percent of the weekly wage he earned during his undergraduate student employment with the University of Texas at El Paso (UTEP), basing the decision in part on an anticipated increase in

wages Ferrell would have received had he accepted continued student employment with UTEP at the graduate school level. *See* TEX.LAB.CODE ANN. § 408.044(a)(3)(requiring an upward wage adjustment for student employees whose ability to find additional employment was limited by the pursuit of education but whose wages were anticipated to increase during the comp period). The district court, sitting on appeal, reduced Ferrell's award to 60 percent of his student wages he earned at the point of injury, believing that notwithstanding the provision allowing for an upward adjustment of benefits for student workers, Section 503.021(b) of the Texas Labor Code set a 60 percent maximum benefits cap on all part-time UT System employees. *See* TEX.LAB.CODE ANN. § 503.021(b). The tension between the student worker wage adjustment provision and the UT System part-time workers provision forms the basis of this dispute.

We hold that the student worker adjustment provision does require upward adjustment of Ferrell's calculated average weekly wages, but that his benefit recovery is capped at 60 percent of the adjusted average weekly wage amount. We reverse and remand for further proceedings.

## BACKGROUND

### *Factual History*

The facts underlying this case are largely undisputed. Ferrell was an undergraduate student in his senior year at UTEP, seeking a bachelor's degree in chemistry. Although teaching assistantships were ordinarily reserved for masters- and doctoral-level students, Ferrell was offered a teaching assistantship as an undergrad. Ferrell had also been conditionally accepted into UTEP's chemistry PhD program.

While cleaning a UTEP lab, Ferrell sustained chemical burns of the cornea and conjunctival sac of his right eye and a superficial injury to the cornea of his left eye when a flask of acid exploded near his face. Ferrell lost use of an eye. He was later diagnosed with post-

2

traumatic stress disorder. UTEP does not contest the legitimacy, nature, extent, cause, or compensability of Ferrell's injuries.

### *Procedural History*

Ferrell filed a workers' compensation claim with the University of Texas System, of which UTEP is a component institution. The UT System[1] accepted Ferrell's claim and admitted he suffered physical and psychological injuries, but it contested the amount of compensation Ferrell requested as well his contention that he suffered a disability from October 27, 2012 to July 31, 2014, in administrative proceedings before the Division. Prior to the Division's ruling, UTEP had been paying Ferrell $34.70 a week in benefits.

The Division made the following rulings:

- Ferrell was a student and not an employee with UTEP.

- Ferrell's average weekly wage as a teaching assistant was $153.40. His average weekly wage was calculated to increase to $300.12, and the evidence established it was reasonable to expect the wages to change during the three years following the injury.

The Division's Appeals Panel affirmed the decision.

Once the administrative process was exhausted, UTEP and Ferrell both filed appeal lawsuits in district court, which were later consolidated. The parties filed cross-motions for summary judgment based partly on stipulated facts. UTEP argued in its motion for summary judgment that Ferrell's recovery was capped at sixty percent of his average weekly wages. The trial court granted UTEP's motion for summary judgment and denied Ferrell's summary judgment.[2] In its judgment, the trial court set benefits at $92.04 a week—precisely 60 percent of

---

[1] For clarity's sake, we will refer to the appellees collectively as UTEP unless context requires us to make a distinction between the UT System and UTEP the component university.

[2] The trial court issued findings of fact and conclusions of law. Findings of fact and conclusions are law are unnecessary following rendition of summary judgment because summary judgment is not the result of a conventional trial; "if summary judgment is proper, there are no facts to find, and the legal conclusions have already been stated in the motion and response." *IKB Indus. (Nigeria), Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997). "The trial

the unadjusted $153.40 a week wage.

This appeal followed.

## DISCUSSION

### *Student Worker Adjustment*

At issue here is the interaction of two separate provisions of the Workers' Compensation Act: the student worker wage adjustment provision, located at TEX.LAB.CODE ANN. § 408.044 (allowing wage calculation adjustment where worker's earnings at the time of injury were limited primarily because of education "intended to enhance . . . [his] future wages"); and a provision specifically applicable to part-time workers employed by the University of Texas System stating that a benefit paid to "an employee who is employed on less than a full workday basis may not exceed 60 percent of the employee's average weekly wage as computed under Section 408.042." TEX.LAB.CODE ANN. § 503.021(b).

Both Ferrell and UTEP ask this Court to apply one of these statutory provisions, but not the other. UTEP insists the Section 503.021(b) cap applies and the Section 408.044 student adjustment provision does not. Ferrell takes the opposite position, stating that the Section 408.044 student adjustment provisions applies, but the Section 503.021(b) cap does not. We find that both the Section 503.021(b) cap and the Section 408.044 student adjustment provision apply in this case.

### *Standard of Review*

A district court reviews a DWC appeal under a modified *de novo* standard of review. *Tex. Builders Ins. Co. v. Molder*, 311 S.W.3d 513, 518 (Tex.App.—El Paso 2009, no pet.). A district court trial from a DWC decision is "limited to issues decided by the appeals panel and on which

court should not make, and an appellate court cannot consider, findings of fact in connection with a summary judgment." *Id*.

judicial review is sought." TEX.LAB.CODE ANN. § 410.302(b). The appealing party has the burden of proof by a preponderance of the evidence. TEX.LAB.CODE ANN. § 410.303.

We review the district court's decision to grant summary judgment *de novo*. Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a. "When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented and render the judgment the trial court should have rendered." *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

We review questions of statutory construction *de novo*, with our primary objective being to give effect to the Legislature's intent. *El Paso Indep. Sch. Dist. v. Kell*, 465 S.W.3d 383, 386 (Tex.App.—El Paso 2015, pet. denied). "We do so by looking first and foremost at the statutory text, reading the words and phrases in context and construing them according to the rules of grammar and common usage." *Id*. "Each word, phrase, or expression must be read as if it were deliberately chosen, and we will presume that words excluded from a provision were excluded purposefully." *Id*. "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011).

When two statutes conflict, we strive to harmonize the two statutes, if possible. *Tex. Indus. Energy Consumers v. CenterPoint Energy Hous. Elec., L.L.C.*, 324 S.W.3d 95, 107 (Tex. 2010). Where reconciliation of two statutes is not possible, "it is the duty of the courts to resolve inconsistencies and effectuate the dominant legislative intent." *Tex. Dep't of Public Safety v. Schaejbe*, 687 S.W.2d 727, 728 (Tex. 1985); *see also Nat'l Media Corp. v. City of Austin*, No. 03–

5

12–00188–CV, 2014 WL 4364815, at *2 (Tex.App.—Austin Aug. 27, 2014, no pet.)(mem.op.). Generally speaking, specific or special statutory provisions will prevail as exceptions to a generally applicable statute "unless the general provision is the later enactment and the manifest intent is that the general provision prevail." TEX.GOV'T CODE ANN. § 311.026(b); *see also Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 86 (Tex. 2006).

*Analysis*

Appellee UTEP defends the trial court's decision on two bases. The university contends that Ferrell does not, as a matter of fact, qualify for a Section 408.044 student worker wage adjustment, and that even if he did, the Section 503.021(b) provision applicable to part-time employees of the UT System caps any benefits recovery at 60 percent and prevents upward wage adjustment. In Issue One, Ferrell asserts that he has established the factual predicate for a Section 408.044 student worker wage adjustment, and that the student worker adjustment is available because the adjustment can be reconciled with the Labor Code provisions generally applicable to the UT System.

The student worker adjustment provision at Section 408.044 states:

(a) For computing impairment income benefits, supplemental income benefits, lifetime income benefits, or death benefits, the average weekly wage of an employee shall be adjusted to reflect the level of expected wages during the period that the benefits are payable if:

(1) the employee is a minor, apprentice, trainee, or student at the time of the injury;

(2) the employee's employment or earnings at the time of the injury are limited primarily because of apprenticeship, continuing formal training, or education intended to enhance the employee's future wages; and

(3) the employee's wages would reasonably be expected to change because of a change of employment during that period.

TEX.LAB.CODE ANN. § 408.044.

Section 503.021, dealing with part-time employees in the UT System, states:

> A benefit under this section for an employee who is employed on less than a full workday basis may not exceed 60 percent of the employee's average weekly wage as computed under Section 408.042.[3]

TEX.LAB.CODE ANN. § 503.021.

We agree with Farrell that he qualifies for a student adjustment under Section 408.044, and we dispatch UTEP's factual challenges on that basis quickly. UTEP does not dispute that Ferrell was a student, meaning that prong one is established. *See* Section 408.044(a)(1). Ferrell also offered evidence showing that UTEP itself limited his ability to pursue outside work while employed as a teaching assistant, as required by Subsection (a)(2). Specifically, UTEP policy stated: "A full time student who has a TA cannot hold an **additional job** at the same time. If you take another job on the side, you are risking your teaching assistantship." [Emphasis in orig.]. UTEP in its brief does not point to any contravening evidence on the issue of Ferrell's ability to

---

[3] Section 408.042, dealing with the calculation of the weekly wage for a part-time employee, redirects toward Section 408.041. *See* TEX.LAB.CODE ANN. § 408.042. Section 408.041, titled "Average Weekly Wage," provides that "[e]xcept as otherwise provided by this subtitle [i.e. Subtitle A, the Texas Workers' Compensation Act], the average weekly wage of an employee who has worked for the employer for at least the 13 consecutive weeks immediately preceding an injury is computed by dividing the sum of the wages paid in the 13 consecutive weeks immediately preceding the date of the injury by 13." TEX.LAB.CODE ANN. § 408.041(a). The average weekly wage of an employee whose wage at the time of injury has not been fixed or cannot be determined or who has worked for the employer for less than the 13 weeks immediately preceding the injury equals:

> (1) the usual wage that the employer pays a similar employee for similar services; or
>
> (2) if a similar employee does not exist, the usual wage paid in that vicinity for the same or similar services provided for remuneration.

TEX.LAB.CODE ANN. § 408.041(b).

If Subsection (a) or (b) cannot reasonably be applied because the employee's employment has been irregular or because the employee has lost time from work during the 13-week period immediately preceding the injury because of illness, weather, or another cause beyond the control of the employee, the commissioner may determine the employee's average weekly wage by any method that the commissioner considers fair, just, and reasonable to all parties and consistent with the methods established under this section. TEX.LAB.CODE ANN. § 408.041(c).

In this case, the Division used the usual wage standard to calculate Ferrell's base average weekly wages. No party disputes that the Division's determination of the *base* average weekly wages was correct; the only dispute here is whether a student worker adjustment to that base rate was proper.

work being limited due to education purposes, and since the policy represents more than a scintilla of evidence, we hold that Ferrell met his burden on the second prong. Finally, with respect to the third prong of Section 408.044 located in Subsection (a)(3), UTEP maintains that Ferrell provided no evidence showing his wages were expected to go up in the future. But the record shows that prior to his injury Ferrell was conditionally accepted into a PhD program in chemistry and that PhD teaching assistants earned higher wages that undergraduate teaching assistants. UTEP's no-evidence contention here is without merit.

Because Ferrell established the factual predicate for a Section 408.044 student worker adjustment as a matter of law, we must confront the statutory construction issue head-on. Reviewing the statues together and against the backdrop of the Act as a whole, we believe that both statutes apply and are not in conflict. Although Section 503.021(b) states that UT System part-time employee benefits are capped at 60 percent, Chapter 503 also— "except to the extent that . . . [it is] inconsistent with this chapter"—explicitly incorporates by reference nearly all provisions of Chapter 408, including the student worker adjustment provision. *See* TEX.LAB.CODE ANN. § 503.002(6)(incorporating Chapter 408 in its entirety save for two provisions dealing with exemplary damages and gross negligence). The exclusion of only two provisions of Chapter 408 is significant to our statutory analysis. If the Legislature wished to make the student worker adjustment provision inapplicable for students that worked part-time for the UT System, the Legislature clearly knew how to do so. The failure to explicitly exclude the student worker adjustment provision when other Chapter 408 provisions were excluded militates against UTEP's position and suggests the Legislature consciously chose to keep the student worker adjustment provision intact as applied to the UT System.

Further, as Ferrell points out, Section 408.044 is framed in mandatory language—"the

average weekly wage of an employee *shall* be adjusted to reflect the level of expected wages . . . ." [Emphasis added]. TEX.LAB.CODE ANN. § 408.044. The Legislature's use of the word "shall" in the Workers' Compensation Act indicates a mandatory command. *Texas Dep't of Ins. v. Jones*, 498 S.W.3d 610, 617 (Tex. 2016)(observing that "the Legislature's careful workers' comp scheme is phrased in mandatory, not permissive language"). Thus, the Division and the trial court were required to apply the adjustment once Ferrell established the factual predicate for the adjustment.

UTEP argues that the "inconsistent with this chapter" language in the incorporation-by-reference statute at Section 503.002(b) working in conjunction with Section 503.021 serves to restrict an award of benefits to 60 percent, even for student workers claiming a Section 408.044 adjustment. In the first place, the case UTEP cites in support of its argument that the student loan adjustment provision should be disregarded because it is a Chapter 408 provision that conflicts with the conditions placed on recovery against the UT System set by Chapter 503—*University of Texas System v. Ochoa*, 413 S.W.3d 769 (Tex.App.—Austin 2012, pet. denied)—is inapplicable here. *Ochoa* dealt with whether UT System workers compensation claimants could recover attorney's fees in an action against the UT System. *Id*. at 772. In that case, the Austin Court of Appeals held that although Chapter 408 had been incorporated into Chapter 503 for claims against the UT System, Chapter 408's attorney's fee recovery provision did not allow the claimant to recover attorney's fees against the UT System because sovereign immunity had not been separately waived for attorney's fees. *Id*. at 773-74. Here, this case does not involve an extra-statutory claim for attorney's fees, but rather a wage adjustment authorized by separate statutory provision explicitly incorporated by reference into the UT System's general standards for calculating wages. *Ochoa* is unpersuasive in this context.

More to the point, UTEP's position presupposes the existence of irreconcilably conflicting

9

statutes. Namely, UTEP avers that while the student worker adjustment applies to workers generally, Chapter 503 applies to workers within the UT System specifically, and since Section 503.021 says that compensation to a part-time UT System worker may not exceed 60 percent of the average weekly wage, Section 503.021 serves to cap any recovery at 60 percent under the general-versus-specific rule of statutory interpretation. But UTEP's argument would have us effectively write the Section 408.044 student worker adjustment provision out of the Act when Section 503.002(b) specifically incorporated it, and we must harmonize statutory provisions and avoid reading language as a nullity, if at all possible. Indeed, once the chain of interlocking incorporations by reference is traced out fully, it becomes clear that the statutes are not in conflict. Both provisions can be given effect.

Section 503.021 dealing with UT System part-time workers explicitly requires the Division to calculate the part-time worker's average weekly wage using the method set out to determine part-time worker wages generally in Section 408.042. Section 408.042 redirects to Section 408.041, which requires the Division in calculating the average weekly wage amount to either look at wages in the thirteen weeks preceding the injury or else employ other methods if the thirteen-week-average method is not feasible. However, Section 408.041 also states that the thirteen-week-average calculation and the other methods listed are to be used "[e]xcept as otherwise provided by this subtitle," i.e. Subtitle A, the Texas Workers' Compensation Act. In other words, Section 408.041 acknowledges that the average weekly wage calculation method it lays out is not the end-all, be-all method for determining the average weekly wage. The calculated amount may also be subject to change by the operation of other parts of the Workers' Compensation Act—for example, Section 408.044, the student worker adjustment provision, which mandates that the Division upwardly adjust the average weekly wage under certain circumstances. The recognition in Section

10

408.041 that other provisions of the Workers' Compensation Act may effect the average weekly wage calculation, combined with Section 408.044's language mandating adjustments for student workers, shows that the student worker adjustment provisions is not knocked out by the 60 percent cap for UT System workers. Rather, the 60 percent cap applies once the average weekly wage, including any adjustments, is finally calculated.

In other words, while the 60 percent cap on part-time employee recovery for employees of the UT System may be static under Section 503.021, the average weekly wage amount to which the 60 percent cap applies is variable per Section 408.041 and 408.042. UTEP may be correct that the 60 percent cap applies to all part-time workers, including student workers.[4] But UTEP is incorrect in asserting that the 60 percent cap also freezes the average weekly wage amount in time at the point of injury. That stretches the language of Section 503.021 cap too far. Per the terms of Section 503.021, the average weekly wage amount is set by Sections 408.041 and 408.042, but those calculation methods also by their own terms allow for the Division to adjust the average weekly wage upward for student workers under the circumstances in Section 408.044. And by Section 408.044's own terms, the student worker adjustment is *required*. None of these statutes are in conflict. By reading the 60 percent cap as being static and the average weekly wage as being variable and subject to Section 408.044's adjustment provisions, we can give effect to both statutory sections without nullifying either. Section 503.021 caps recovery at 60 percent of whatever the average weekly wage is once any student worker adjustments are taken into account.

In this case, the trial court erred by granting UTEP's summary judgment because the legal

---

[4] In Issue Four, Ferrell argues the Section 503.021 cap does not apply at all because he was not an "employee who is employed on less than a full workday basis" of the UT System; rather, he was a student. The Division itself found that for purposes of Section 503.021 Ferrell was not a part-time worker, but was a student. However, we find that Ferrell meets the statutory definition of an "employee" under the Act. *See* TEX.LAB.CODE ANN. § 401.012 (defining "employee" in the Act as "each person in the service of another under a contract of hire, whether express or implied, or oral or written"). As such, Section 503.021 applies here. Issue Four is overruled.

11

theory on which UTEP relied was incorrect. The student adjustment applies here. The trial court awarded 60 percent of Ferrell's average weekly wages, but it calculated those wages without regard to any anticipated increase in wages Ferrell would have received in the future during the compensation period. The correct measure of calculation should be 60 percent of Ferrell's average weekly wages taking into account the mandatory adjustment required by Section 408.044. Because the trial court's decision did not apparently take the adjustment into account, we must reverse.[5]

Issue One is sustained.

### *Reversal or Rendition?*

The trial court rendered summary judgment on stipulated facts, finding that there was no genuine issue of material fact and that UTEP was entitled to judgment as a matter of law. We have found that the Section 408.044 student worker adjustment is applicable to student workers in the UT System. When reversing, we ordinarily render the judgment the trial court should have rendered unless remand for further proceedings is necessary. TEX.R.APP.P. 43.2(c)-(d). In his prayer, Ferrell asks the Court to reverse, to make findings of law, and to grant "all other relief, legal and equitable" to which he may be entitled, but Ferrell does not explicitly ask for rendition of judgment or specify what a potential judgment should say. Because of this, and because resolution of the adjustment issue under the standard we set out may involve further resolution of facts, we determine that remand is proper so that the trial court may recalculate Ferrell's wage using the student worker adjustment provision in Section 408.044.

### CONCLUSION

---

[5] In Issues Two and Three, Ferrell maintains that the trial court also erred by ordering a compensation amount below the $123.00 per week minimum amount set by TEX.LAB.CODE ANN. § 408.063. UTEP maintains this argument was unpreserved because Ferrell did not raise this point in the court below. Because we resolve this appeal on Issue One, we decline to address Issues Two and Three as unnecessary to the resolution of this appeal.

12

We reverse the trial court's summary judgment and remand for further proceedings consistent with this opinion.


May 17, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

13