# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO.  03-19-00051-CV

**Anna Luisa Kell, Appellant**

**v.**

**Texas State Board for Educator Certification, Texas Education Agency and
Mike Morath, Commissioner of Education (in his Official Capacity), Appellees**

### FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-002347, THE HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from the judgment of the district court of Travis County affirming an order of appellee Texas State Board for Educator Certification (the Board).  By its order, the Board revoked the Texas Principal and Educator certificates and all other Texas credentials held by appellant Anna Luisa Kell.  Other appellees are the Texas Education Agency (TEA) and Mike Morath, Commissioner of Education.  This Court will affirm the district court's judgment.

This appeal arises from the El Paso Independent School District (District) cheating scandal and the disciplinary actions that followed in its wake.  *See El Paso Indep. Sch. Dist. v. Kell*, 465 S.W.3d 383, 384 (Tex. App.—El Paso 2015, pet. denied).  Beginning in 2006 and continuing through August 2011, the District Superintendent, Lorenzo Garcia, directed school personnel to manipulate grades, attendance records, and test scores, among other things, in the District's high

schools in order to continue obtaining federal funding from two programs of the U.S. Department of Education. *See id.* at 384.

The federal programs supply funding to public schools serving disadvantaged students, provided that those schools meet accountability standards.[1] These standards require separate identification of specific at-risk student subgroups. When a subgroup consists of fifty or more students, its test scores are separately reported and, if failing, cause the particular school to fail that standard. On the other hand, subgroups composed of fewer than fifty at-risk students are absorbed into the school's general student population where the at-risk students' lower scores will not likely pull the larger group's scores down to a failing level. Failure to meet federal accountability standards for two years has consequences: the school is required to take corrective action and make progress through prescribed stages if it is to continue receiving federal funding.

The District, which borders Mexico, has a large at-risk student body, including a significant number of limited English-proficiency students. Accordingly, the District has received millions annually in federal funds. But until Garcia became superintendent in 2006, the District had long struggled to meet the federal accountability standards. Under Garcia's guidance, the District's academic performance made a miraculous turn-about. Then it came to light that the gains came, not from academic improvement, but instead, from a district-wide scheme manipulating student data and grade placement. By these contrivances, Garcia and his cabal had artificially inflated school performance by absorbing, thereby diluting, underperforming subgroups into the mainstream student population for scoring purposes.

---

[1] TEA, dissatisfied with Kell's statement of facts, filed its own. Although Kell filed a reply brief, she did not contradict any facts stated by TEA.

In 2008, Kell became assistant principal at Bowie High School, a District school, and worked there until November 2012. About the time Kell became assistant principal, Bowie had failed to meet the federal accountability standards. The District's central administration warned Bowie's staff that they "had better get the job done" by reducing the limited-English-proficiency subgroups to fifty or fewer students thereby raising the school performance scores.

After discovery of the scandal, Superintendent Garcia pleaded guilty to several federal charges and served prison time. Later, TEA, for the Board, filed disciplinary actions against thirteen District administrators, including Kell, for their part in the accountability scandal. As some of the accused administrators settled or voluntarily surrendered their certificates, TEA amended its pleadings from time to time to reflect these changes. TEA's "trial" pleading in the administrative hearing, the Fifth Amended Petition, stated its case against Kell and two other Bowie administrators, charging them with numerous violations of the Texas Education Code, the Texas Administrative Code, and the Educator's Code of Ethics, and sought permanent revocation of their Texas Educator Certificates.

The case against Kell and the two other Bowie administrators was heard by two administrative law judges from the State Office of Administrative Hearings. The administrative law judges conducted an eight-day hearing. After the hearing closed, the parties submitted briefs and responses. In its closing brief, TEA summarized its allegations and arguments against Kell. In a concluding sentence, which streamlined a lengthy and complex case, TEA advised the judges that "any allegations not addressed herein are withdrawn." A few months later, the judges delivered a proposal for decision. The judges concluded that Kell violated the Texas Education Code and Ethics Standards by, among other things, changing student grades in official transcripts without a proper basis; pressuring teachers to assign grades that were not legitimately earned by

3

students; submitting data to TEA or the U.S. Department of Education that was known or reasonably should have been known to be false or misleading; and creating a program of credit recovery (called mini-mesters) that awarded course credit to students without requiring them to demonstrate mastery of curriculum. The judges recommended that the Board revoke all of Kell's certificates.

After hearing, the Board adopted the proposal for decision and by its order revoked the Texas Principal and Educator's certificates and all other Texas credentials held by Kell. The district court rendered judgment affirming the Board's order.

On appeal, Kell does not attack the evidentiary foundation or legal conclusions supporting the revocation of her certificates. Hence, her many adjudicated violations of the Texas Education Code and the Educator's Code of Ethics Standards stand unchallenged. Instead, Kell's appeal is based on her claim that she was denied due process because she was not provided notice of and a meaningful opportunity to refute the theory upon which sanctions might be based. *See University of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). Specifically, Kell claims that because TEA's trial pleading charged her with "fraud" and "irreparable harm to students," TEA was required to prove common-law fraud as a prerequisite for each of the many allegations asserting violations of the Texas Education Code and the Educator's Code of Ethics. Then, she argues, TEA withdrew fraud as an allegation in its closing brief. The withdrawal, Kell maintains, somehow converted the allegations against her into new, lesser charges after she allegedly defended against fraud. We disagree.

TEA's trial petition consists primarily of two sections entitled "Introduction" and "Matters Asserted." The "Introduction," as the name implies, is an overview of the origins and causes of the years-long district-wide cheating scandal; the District's failing struggle to hold on to

4

federal funding; the hiring of Superintendent Garcia; his apparent success in raising the District's academic performance; and then the exposé that the academic improvement was the result of a district-wide scheme to manipulate student data and grade placement.

The "Matters Asserted" section of the petition contains TEA's allegations against Kell and the two other Bowie High School administrators for violation of the Education Code, the Administrative Code, and the Code of Ethics. In sixteen factual allegations, Kell was charged with violations of five sections of the Texas Education Code, six sections of the Texas Administrative Code, and nine standards of the Educators' Code of Ethics.

Kell cites a total of two sentences from the twenty-seven-page trial petition in support of her contention that it charged her with common-law fraud. The first sentence is found in the "Introduction" section of the pleading and provides as follows:

> Each of the above-named Respondents [the three Bowie Administrators including Kell], among others, played a role in implementing the fraudulent and illegal activities and causing irreparable harm to students, as described below.

This sentence concludes a seven-page introduction and overview of the District's years-long, cheating scandal.[2] It provided information and context for the Bowie administrators' conduct that contributed to the accountability scheme. In our view, the descriptive statement that Kell and the others "played a role" in the scandal cannot be stretched to mean that TEA was charging Kell with common-law fraud.

The second sentence, upon which Kell relies, contains language similar to that of the concluding sentence of the "Introduction," discussed above. This sentence precedes the many

---

[2] In her brief in this Court, Kell contends incorrectly that this sentence appears in the "Matters Asserted" section of the petitions.

5

allegations of the petition that Kell violated the Education Code, the Administrative Code, and the Educator's code of Ethics, and provides as follows:

> In such capacities, . . . . Kell participated in the fraudulent activities described herein, to provide state and federal education agencies with false and misleading information that affected state and federal accountability measures and to withhold from one or more Bowie students the public education to which they were entitled.

As with the first sentence, the statement that Kell "participated in" in the District accountability scandal introduced the allegations of statutory and regulatory violations which followed. It was not a pleading that Kell committed common-law fraud.

The cornerstone of Kell's entire argument on appeal is her contention that TEA charged her with common-law fraud. We have concluded that the two sentences relied upon by Kell do not support that claim.

The judgment is affirmed.

_____

Bob E. Shannon, Justice

Before Chief Justice Rose, Justices Smith and Shannon*

Affirmed

Filed: October 30, 2019

* Before Bob E. Shannon, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).