**DISSENTING Opinion Filed August 27, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-01290-CV

**FERNANDO HERRERA, Appellant**
**V.**
**DALLAS INDEPENDENT SCHOOL DISTRICT, Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-07866**

## CONCURRING AND DISSENTING OPINION

Opinion by Justice Schenck

I join the majority in its determination Fernando Herrera was required to initiate a pre-suit grievance under government code section 554.006 before he filed suit. I do not join the majority in its determination that a fact issue exists as to whether Herrera initiated a pre-suit grievance before filing suit because the record establishes, as a matter of law, Herrera failed to do so. Accordingly, I dissent from the majority's fact issue determination and reversal of the trial court's ruling on Dallas Independent School District's ("DISD") plea to the jurisdiction.

**WHISTLEBLOWER CLAIMS**

Herrera asserts a claim against DISD under the Whistleblower Act ("Whistleblower Act" or the "Act") in connection with the termination of his probationary employment contract. *See* TEX. GOV'T CODE ANN. §§ 554.001–.010. He does not assert the school district breached his employment contract or engaged in a discriminatory act. Thus, Herrera's claim exists only to the extent it is authorized by the whistleblower statute and is subject to the statutory requirements under the Act. Compliance with the statutory requirements is a prerequisite to waiver of DISD's sovereign immunity. *Jordan v. Ector Cty.*, 290 S.W.3d 404, 406 (Tex. App.—Eastland 2009, no pet.). Pursuant to the Act, Herrera was required to initiate an action under DISD's grievance procedure after DISD allegedly violated the Act by discharging him and prior to filing suit. GOV'T § 554.006.[1] As I more fully discuss below, the sole grievance Herrera submitted concerned a notice from the superintendent that he intended to recommend termination of Herrera's

---

[1] Section 554.006 provides, in relevant part:

    (a) A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter.

    (b) The employee must invoke the applicable grievance or appeal procedures not later than the 90th day *after* the date on which the alleged violation of this chapter:

        (1) occurred; or

        (2) was discovered by the employee through reasonable diligence.

TEX. GOV'T CODE ANN. § 554.006(a), (b) (emphasis added).

employment contract at the end of the contract period. While Herrera was advised that such a notice did not amount to a discharge and that his attempt to assert a grievance at that stage was without effect, he did not initiate a grievance thereafter, or more particularly, in response to the actual decision to terminate his contract. Accordingly, he did not comply with the statutory requirements under the Act.

## BACKGROUND

DISD hired Herrera to be a bilingual teacher at a DISD elementary school under a probationary employment contract. Herrera and two of his colleagues had several interpersonal conflicts and asserted complaints against each other. An independent review and investigation ensued and concluded Herrera engaged in bullying conduct and violated school policy by publicly identifying the name of a student who had been the subject of a sexual abuse investigation.

On March 29, 2018, DISD sent Herrera a "Notice of Intent to Recommend Non-renewal or Termination" of Herrera's probationary employment contract at the end of the contract term. More specifically, the letter stated:

> This letter is to provide you with advance notice that the Superintendent of Schools of the Dallas Independent School District . . . intends to recommend, for approval, to the Board of Trustees pursuant to Texas Education Code 21.103 and District Board Policies DFAB (LEGAL) or DFBB (LEGAL/LOCAL), that it is in the best interests of the District that your contract end at the conclusion of the contract period.
>
> You have the option to voluntarily resign from the District. If you choose to do so, District administration will accept your resignation, effective for the end of the 2017-18 school year, and, a recommendation

for the non-renewal or termination of your contract will not be made to the Board of Trustees.

Although we understand that this decision is time sensitive, in order for this recommendation not to be presented to the Board, your resignation must be submitted in the Oracle Self-Service system no later than Wednesday, April 11, 2018 at 12:00 pm.

On April 25, Herrera's attorney faxed a letter to DISD stating:

I represent Fernando Herrera. This letter is in Response to the letters dated March 29, 2018 and March 20, 2018,[2] which were received on April 2, 2018 and March 31, 2018 respectively. Please accept this letter as the written request for an appeal and hearing *for the notices received*.

(emphasis added). On April 26, Herrera submitted a grievance to DISD complaining about the March 29 "notice of intent to recommend non-renewal or termination at the end of the contract term for best interest/excess staff" and the March 20 "excess notification letter."[3] DISD sent a letter to Herrera advising:

This letter serves as an official notification that the Level I grievance filed on April 27, 2018,[4] is now closed. ***The Notice of Intent to Recommend Non-Renewal letter you received is a courtesy notification of a potential future action. The notification is not a termination letter*** thus a grievance cannot be submitted. In the future, if you receive a Proposed Notice of Non-Renewal or Termination Letter you may submit an appeal at that time.

(emphasis added). That letter was signed by the manager of Employee Relations.

---

[2] The March 20, 2018 letter notified Herrera that his position had been identified as an excess position for the 2018–19 school year.

[3] While Herrera's submitted grievance referenced the Whistleblower Act in connection with the notice concerning the termination recommendation, his asserted Whistleblower Act claim does not concern the recommendation, but rather his actual termination.

[4] It appears DISD received Herrera's grievance after hours on April 26 and thus considered it filed on April 27. Hereinafter, I will refer to Herrera's grievance as the April 26 grievance.

In the interim, the DISD Board of Trustees met and considered, among other matters, the superintendent's recommendation to terminate Herrera's probationary employment contract. The trustees ultimately voted to terminate Herrera's contract at the end of its term. DISD issued a letter, signed by the President, Board of Trustees, to Herrera titled "Probationary Teacher Notice of Termination," stating:

> YOU ARE HEREBY NOTIFIED that the Board of Trustees, at a lawfully called meeting on April 26, 2018, voted that it is in the best interests of the District, that your probationary contract be terminated at the end of the 2017-2018 school year, pursuant to Texas Education Code 21.103(a) and DISD Board Policy DFAB (Legal). In accordance with the law, the Board's decision to terminate a probationary employee at the end of a contract period is final and may not be appealed.[5]

Herrera received this letter on May 4.[6]

After receiving the termination letter, Herrera did not file a grievance. Instead, on June 15, he filed his Whistleblower Act lawsuit alleging DISD *terminated* his employment in retaliation for his good faith complaints concerning

---

[5] While Herrera could not appeal the Board's termination decision to the Commissioner of Education, the grievance process was still available to him. *See* TEX. EDUC. CODE ANN. § 21.103(a) (board decision, in the best interests of the district, to terminate employment of a teacher employed under a probationary contract at the end of the contract period is final and not appealable); *see also* GOV'T § 554.006 (requiring the employee to invoke the applicable grievance procedure as a prerequisite to filing a claim under the Whistleblower Act).

[6] The majority notes that Herrera had previously been advised that the school district recommended for cause termination of his employment prior to the expiration of his contract period, which the school district later withdrew. In that instance, Herrera timely followed the appeal procedure applicable to that action. The majority does not explain how this affects the statutory question presented here as to whether Herrera filed a timely and proper grievance concerning the termination of his employment at the end of the contract period in connection with the instant whistleblower action and the statute he invokes.

–5–

violations of the law. Herrera did not assert he had fulfilled the Whistleblower Act's pre-suit requirements.

DISD filed a plea to the jurisdiction challenging the pleadings and the existence of evidence to support subject matter jurisdiction. In doing so, DISD asserted Herrera failed to initiate DISD's applicable grievance procedures prior to filing suit. In support of its plea, DISD included the communications identified above, the confirmation of Herrera's April 26 grievance setting forth the information he electronically submitted, and numerous other documents, including its DGBA (Local) policy, which allows probationary teachers, like Herrera, to submit certain grievances to the school board. Herrera did not contradict DISD's evidence and did not present any evidence of his own; instead, he referenced the evidence presented by DISD.

## DISCUSSION

The Whistleblower Act prohibits state and local governmental entities from suspending or terminating the employment of, or taking other adverse personnel action[7] against, a public employee who in good faith reports a violation of law by the employing governmental entity, or another public employee, to an appropriate law enforcement authority, and provides for a private cause of action if certain

---

[7] "Personnel action" means an action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation. GOV'T § 554.001(3). Providing a notice of intent to recommend termination is not an adverse personnel action.

–6–

prerequisites are met and the claim is asserted within the applicable statute of limitations. GOV'T §§ 554.002(a), 554.003, 554.005, 554.006.

As a prerequisite to suit under the Whistleblower Act, the complainant must initiate action under the state or local government employer's grievance or appeal procedures before suing and must do so within 90 days of the date the employer's violation occurred or was discovered by the employee through reasonable diligence. *See id.* § 554.006(a), (b). Section 554.006's requirement that an employee initiate a grievance prior to filing suit under the Whistleblower Act is designed to "afford the employer an opportunity to correct its errors by resolving disputes before litigation." *City of Fort Worth v. Shilling*, 266 S.W.3d 97, 102 (Tex. App.—Fort Worth 2008, pet denied). The Act's requirement that the complainant initiate action under the employer's grievance or appeal procedures is a jurisdictional prerequisite to suit. *City of Madisonville v. Sims*, No. 18-1047, 2020 WL 1898540, *3 (Tex. Apr. 17, 2020). The onus is thus on the employee to show that he timely initiated the grievance process once the governmental employer has pierced the pleading to show jurisdiction does not exist. *See El Paso Indep. Sch. Dist. v. Kell*, 465 S.W.3d 383, 386 (Tex. App.—El Paso 2015, pet. denied); *W. Houston Charter Sch. Alliance v. Pickering*, No. 01-10-00289-CV, 2011 WL 3612288, at *3 (Tex. App.—Houston [1st Dist.] Aug. 18, 2011, no pet.) (mem. op.).

All parties to this case agree that DISD DGBA (Local) policy requires "[e]mployees . . . [to] initiate a dispute resolution process under this policy within

–7–

the time specified by law and policy." Thus, once one concludes that the policy applies, the employee must initiate the grievance process concerning the termination of his contract within the time frame specified in the Whistleblower Act. Gov't § 554.006(b).

The undisputed evidence establishes the only grievance Herrera attempted to initiate was his April 26 complaint identifying the "incident date" as March 29, 2018, by which he claimed the "recommend[ation] of non-renewal or termination was in retaliation for his having made good faith reports to the appropriate law enforcement authorities on other employees that violated the law." Thus, the issue presented here is whether that attempt satisfied the requirements of section 554.006 with respect to Herrera's current complaint about the actual, subsequent termination of his employment.

The majority concludes this complaint raises a fact issue concerning Herrera's satisfaction of the section 554.006 requirements. I conclude it does not. The plain language of section 554.006, DGBA (Local) policy concerning grievances, Herrera's April 26 grievance, and case law establish a grievance filed before the alleged violation of the Whistleblower Act does not satisfy the prerequisites of section 554.006. *See Pickering*, 2011 WL 3612288, at \*6 (letter predating Pickering's alleged constructive discharge did not initiate grievance process); *Jordan*, 290 S.W.3d at 406 (grievance Jordan filed prior to her termination could not have addressed her wrongful termination under Whistleblower Act because the

termination had not yet occurred and thus could not meet the requirements of section 554.006(a)).

The majority's effort to distinguish *Pickering* and *Jordan* rests on its erroneous conclusion that attempting to grieve a notice of a recommendation of termination, which may never come to fruition, is synonymous to grieving an ultimate termination decision. It is only the latter to which the Whistleblower Act is directed. GOV'T § 554.006(a), (b). Similarly, the majority's reliance on employment law cases—not involving the Whistleblower Act—that look to the date an employee is placed on notice of a forthcoming adverse action for calculation of the limitations periods is misplaced. Had Herrera brought such a claim and had the school district raised the issue of limitations, those cases might be instructive. But the issue presented here is strictly one of the construction of the statute Herrera invoked. That provision is unambiguously addressed to actual "action," including "suspension" or "termination" of employment, and likewise requires the filing of the grievance "after" that "action." *Id.*

As stated above, section 554.006(b) requires that the employee invoke the applicable grievance or appeal procedures not later than the 90th day after the date on which the alleged violation of the Whistleblower Act occurred or was discovered by the employee through reasonable diligence. *Id.* § 544.006(b). Here, according to Herrera's pleadings, the alleged violation of the Whistleblower Act arose from the termination of his probationary employment contract, which was received by

Herrera on May 4. Prior to the Board of Trustees' vote to terminate Herrera's contract, there could be no violation of the Whistleblower Act to grieve, and Herrera had already been notified that his earlier attempt to initiate a grievance in connection with the recommendation was improper and had been closed.[8] Because the record clearly establishes that Herrera did not initiate a grievance after the school board terminated his contract and gave him notice of its decision, he failed as a matter of law to satisfy the jurisdictional prerequisite to suit under section 554.006.

## CONCLUSION

The district court lacked jurisdiction over Herrera's claims and properly granted DISD's plea to the jurisdiction. Consequently, I dissent from the majority's conclusion that a fact issue exists as to whether DISD's immunity from suit has been waived and reversal of the trial court's dismissal order.

/David J. Schenck/

DAVID J. SCHENCK
JUSTICE

191290DF.P05

---

[8] The majority's contention that a fact finder could conclude Herrera's April 26, 2019 grievance, which was not submitted to any decisional body because an act for which a grievance lies had not occurred, timely grieved his subsequent termination is not supportable and would thwart section 554.006's provision giving the grievance or appeal authority 60 days to make a final decision. GOV'T § 554.006(d). Logically, if a decision in the first instance had not yet been made, the appropriate authority would not be in a position to initiate a review of that decision, much less adhere to and track the statutory 60-day deadline.